Boehme v. Belknap County          CV-01-177-B    03/25/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Richard Boehme

    v.                                    Civil No. 01-177-B
                                          Opinion No. 2002 DNH 070
Belknap County et al.


MEMORANDUM AND ORDER

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and a supplemental negligent supervision theory.  The essence of the federal claim is that the named defendants deprived plaintiff Richard Boehme of his rights to procedural due process by constructively discharging him from his position as Head of Environmental Services at the Belknap County Nursing Home without affording him notice of the charges against him, notice that his discharge was being contemplated, and an opportunity to respond both to the charges and the appropriateness of discharge. See O'Neill v. Baker, 210 F.3d 41, 47-50 (1st Cir. 2000) (elaborating upon the pre-termination due process rights recognized in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)); Cotnoir v. University of Maine Systems, 35 F.3d 6, 10-12

(1st Cir. 1994) (similar).  Defendants have moved for summary judgment on Boehme's federal claim,[1] arguing, inter alia, that no reasonable jury could conclude that Boehme was deprived of his due process rights.  I agree.

The summary judgment record contains competent and uncontradicted evidence to the following effect.  On the night of May 13, 1998, Boehme was involved in a workplace altercation with a fellow employee.  Following the altercation, defendant Robert Chase, the nursing home's administrator, met with Boehme, who was permitted to tell his side of the story.  Chase informed Boehme that his actions were unacceptable.  The next day, May 14, 1998, Chase and Boehme met again.  Again, Boehme told Chase his side of the story.  Again, Chase told Boehme that his actions were unacceptable.  During the meeting, Chase suggested to Boehme that if he intended to continue in supervisory positions in the future, he might wish to undergo counseling.  Chase also suspended Boehme "pending further action by the Belknap County

---

[1]Defendants also have moved for summary judgment on plaintiff's negligent supervision claim, and plaintiff concedes (correctly) that there is no trialworthy issue with respect to this claim.  Accordingly, I grant defendants' motion with respect to this claim without further discussion.

Commission, which could include termination." Finally, Chase asked Boehme "to talk with [him] again during the next week, after he had reflected on the situation."

That same day, Chase also sent Boehme a letter formally notifying him that he was suspended from his position through Friday, May 22, 1998, "pending further investigation and any decision concerning further action as a result of the incident which occurred at the facility last evening." The letter also advised Boehme of the specific provisions of the Belknap County Personnel Policies that the incident implicated, and stated that, if he were found responsible for the incident, he was "subject to disciplinary action under RSA 28-10a." N.H. Rev. Stat. Ann. ("RSA") § 28:10a specifies, inter alia, procedures to be employed when discharging certain county employees.[2] The letter also stated:

> [I]f you are to continue, steps must be taken to repair the damage which has occurred, and there must be assurances that there will be no recurrence of last

---

[2]Boehme does not contest that the incident was sufficiently serious to justify discharge, but the parties dispute whether Boehme was a "probationary" employee subject to dismissal at will or a "tenured" employee entitled to the procedural protections of RSA § 28:10a. I will assume that Boehme was a tenured employee for purposes of my analysis.

night's incident . . . .

[I]f you wish to continue your employment at Belknap County, and are willing to take the necessary steps to attempt to resolve the situation and continue your employment, then we need to explore the possibilities as soon as possible. I look forward to hearing from you next week as to how you would like to address this matter.

During the next six days, Chase did not hear from Boehme. On May 20, 1998, Chase submitted to the Belknap County Commission a report recommending that Boehme be terminated. At a Commission meeting that evening, the defendant Commissioners voted to terminate Boehme if he did not submit his resignation by May 22, 1998. By letter dated May 21, 1998, Boehme "resigned"[3] effective June 1, 1998.

Based on the foregoing, the Loudermill procedural due process requirements (as elaborated by the First Circuit and set forth in the first paragraph of this memorandum and order) were clearly met. By specifying the personnel policies implicated by

_____

[3]Defendants argue that they are entitled to summary judgment on Boehme's claim that his rights were violated in connection with his discharge because Boehme was not, in fact, discharged. Boehme responds that his "resignation" was a constructive discharge because it was coerced by the Commission's resign-or-be-discharged directive. I will assume that Boehme was constructively discharged for purposes of my analysis.

-4-

the incident, referencing the statute setting forth procedures for discharging tenured employees, and advising Boehme that his continued employment at Belknap County was far from assured, Chase's May 14, 1998 letter notified Boehme of the nature of the charges against him and that discharge was being contemplated. Moreover, by twice meeting with Boehme and listening to his side of the story, as well as inviting Boehme to let Chase know during the "next week"[4] how Boehme would like to address the situation, Chase gave Boehme an adequate opportunity to respond to the charges and to the appropriateness of discharge.[5] The Constitution requires no more. See Loudermill, 470 U.S. at 545-46 (emphasizing that the constitutionally required "hearing" is

---

[4]Chase did not wait until the end of the next week to recommend Boehme's dismissal, but Boehme has not suggested that Chase acted so quickly after the May 14, 1998 discussion and letter as to preclude the further discussion(s) that Chase invited.

[5]In his objection to defendants' motion, Boehme appears to suggest that Chase's actions were insufficient to satisfy the Loudermill standards because Chase both investigated the incident and recommended termination. But Boehme has introduced no evidence to rebut the presumption that Chase is a person "of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." Withrow v. Larkin, 421 U.S. 35, 55 (1975) (citation and internal quotation marks omitted).

to serve as "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action").

For the reasons stated, I grant defendants' motion for summary judgment [document no. 12]. The Clerk is directed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 25, 2002

cc:  Edward D. Philpot, Esq.
     John T. Alexander, Esq.